1               UNITED STATES DISTRICT COURT

2                  DISTRICT OF MINNESOTA

3    ----------------------------------------------------------

4

     United States of America,    )    CR 09-219 (DWF/SRN)
5                                  )
                    Plaintiff,     )    SENTENCING HEARING
6                                  )
        -v-                        )
7                                  )
     Pastor Sanchez-Martinez,      )    March 25, 2010
8                                  )    10:30 o'clock, a.m.
                    Defendant.     )    St. Paul, Minnesota
9

10   ----------------------------------------------------------

11

12        BEFORE THE HONORABLE JUDGE DONOVAN W. FRANK

13           UNITED STATES DISTRICT COURT JUDGE

14           CRIMINAL SENTENCING PROCEEDINGS

15

16

17                      *    *    *

18

19

20

21

22                    JEANNE M. ANDERSON
23                   Registered Merit Reporter
                  Suite 646, 316 North Robert Street
24                    St. Paul, Minnesota 55101
                        (651) 848-1221
25

```
 1   APPEARANCES:

 2

 3

 4   FOR THE PLAINTIFF:    Richard Newberry, Esq.
                          Assistant United States Attorney
 5                        Suite 600, 300 South 4th Street
                          Minneapolis, Minnesota 55415
 6                        (612) 664-5600

 7

 8

 9

10

11   FOR THE DEFENDANT:    Douglas Olson, Esq.
                          Federal Public Defender's Office
12                        Suite 107, 300 South 4th Street
                          Minneapolis, Minnesota 55415
13                        (612) 664-5858

14

15

16

17   SPANISH/ENGLISH INTERPRETER:   Marianne McEvoy

18

19

20                        (Defendant present.)

21

22

23

24

25
```

1          (In open court.)

2          THE COURT:  If counsel wants to come to the

3  podium?  And we can first, Ms. Schaffer, swear in our

4  interpreter this morning.  Mr. Newberry, good morning.

5          MR. NEWBERRY:  Good morning, Your Honor.

6          THE COURT:  Mr. Olson, good morning.

7          MR. OLSON:  Good morning, Your Honor.

8          THE COURT:  I will explain the delay in

9  starting once we administer the oath to the interpreter?

10          THE CLERK:  Sorry.

11          (Interpreter sworn.)

12          THE COURT:  The reason that we were late in

13  coming in is -- I am responsible for it, but I asked the

14  Probation Officer to make a call about something that I

15  don't believe will have any effect on the sentence

16  today.  I suspect defense counsel will agree with me --

17  I will see what Mr. Newberry says.

18          And I probably should have known this before,

19  but did not, and that is since the -- not only were all

20  the sex-related criminal charges dismissed when there

21  was a plea to terroristic threat, and if I go by the

22  sentence the State Judge gave, he gave everything but a

23  written apology to the Defendant and didn't even follow

24  the State Guidelines, which I have here, because he did

25  plead to the most serious terroristic threat under

1    Subdivision 1.  That is the highest rated.  It is not

2    rated very high under the state law, but it is higher

3    than Subdivisions 2 and 3.

4         And there is no distinction made between gets

5    an intentional felony, and we will get into that

6    argument here.  The reckless disregard language is the

7    second element, there is an intent to threat, all part

8    of Subdivision 1.

9         Well, that argument aside, I saw the

10   predatory sex offender registration.  And I learned this

11   morning, and maybe everybody but me knew this, it is

12   irrelevant that that was dismissed.  Once you are

13   charged with -- if there is an exception -- I just

14   called somebody to get some confirmation, that the

15   Defendant is a registered sex offender and he is in

16   compliance as we speak.

17        The compliance piece really wasn't what I was

18   looking for.  The inquiry was in my own ignorance, if

19   the charges are dismissed, and there is no element that

20   even hints sex in the elements of the offenses pled to,

21   how do you become a registered sex offender?  And it is

22   the charge, as we found out.

23        So, whether there is some other remedy that

24   goes far beyond this Court or the focus of the issues

25   today is another matter.  But, we called probation and

1    they have a list.  And your client is there.  They have

2    got where he is at currently, that he is in compliance,

3    he has been at the Sherburne County Jail.  So, I guess

4    even though I actually -- my reason to seek that

5    information was I looked at the State Court records, and

6    it was clear that the charge had been dismissed.  In

7    fact, terroristic threat wasn't even part of the

8    original complaint, which isn't entirely unusual.  But

9    the -- and that must have been part of the plea

10   agreement once they put it together.

11           So, I don't believe that will have any role

12   in the main focus of what is a fair sentence today, but

13   we shall see with respect to that sex offender

14   registration.

15           My suggestion would be this, that there is

16   one objection that does not relate to the advisory

17   guideline computation with respect to the factual

18   content of the charges that arose out of the eventual

19   plea to terroristic threat.  We can take that up now or

20   as part of the overall argument, or we can take that up

21   now and I can grant or deny the motion to delete that

22   language from the presentence report, even though

23   neither side claims it relates to the computation.

24           Or, we can take up at the end of the hearing

25   once we have dealt with the sentence and imposed a

1    sentence.  Do you have a preference, Mr. Olson?  I doubt

2    that Mr. Newberry will probably have a view one way

3    or -- he will probably take it up either way.

4              MR. OLSON:  Oh, I think kind of in the

5    chronological systematic approach to these things, maybe

6    we should take that up now.  I have objected to the

7    wholesale inclusion of the factual averments from the

8    criminal complaint, in part because from my perspective,

9    as I've noted throughout my position papers, is that

10   there are two sides to that story and we dispute those

11   facts and maintain that many of them are false.

12             I have asked that they be deleted from the

13   PSR; but, more importantly is that since those facts are

14   contested, it would be inappropriate for the Court to

15   rely on contested facts in making a fair determination

16   about what to do in this case, unless those facts are

17   somehow proven.  So I think my objection is duly noted.

18   And then I think we can move on to the rest of our

19   arguments.

20             THE COURT:  Well, what I was going to

21   suggest -- and of course, I am not going to rely on

22   them.  I actually think there is another issue that is

23   not in front of us today and won't have any effect on

24   the sentence.  And I have a strong view that is not

25   shared by all judges.  I have never taken a no contest

1   plea.  And I think it is an interesting thing about what

2   facts the judge can rely on when all they have is -- it

3   is not an issue in this case -- the fact of conviction

4   where somebody said -- or I call it the prostituted

5   *Alford* plea in State Court where they say, I admit to

6   nothing.  I am innocent.  I didn't do a thing, but I

7   will take the deal.  Which could have happened here, you

8   know, where there was a sentence more akin to a speeding

9   ticket or a DWI given here for whatever reasons, but I

10  suppose -- I won't speculate about that, because that

11  won't play much of a role.  If it plays any role today,

12  the Government may say it in a small way prejudices

13  them; but, we will get into that shortly.

14            I think there is a clear remedy that is fair

15  to everyone here, because to the extent that your

16  client's rights are protected to remove it, I

17  respectfully decline to do that, and I would probably

18  decline to do it even if -- one, I am not going to rely

19  on them, but even if there wasn't this -- those that

20  were precisely, to my surprise, under state law used to

21  justify the registration of sex offender.  But, even if

22  that was not an issue and I hadn't seen it, I believe

23  the remedy should be, here are the Complaint

24  allegations, because it is clear he didn't plead to

25  those.  And the remedy is to add a short paragraph

1   saying, the Defendant denies these allegations in total,

2   and therefore pled to the charges that he pled to, and

3   just put that language in to say, yes, here is what is

4   charged in the Complaint.  And the Defendant denies

5   these.  And I will add that language to the end of that

6   paragraph.  That is what I typically do, Mr. Olson.

7              MR. OLSON:  That is fine.  My objection is

8   still duly noted.

9              THE COURT:  Oh, I'm not asking for a

10  stipulation.  Do you want to be heard on this, Mr.

11  Newberry?

12             MR. NEWBERRY:  No, we have nothing to add to

13  that.

14             THE COURT:  So, I will just ask the Probation

15  Officer to add that.  The objection is noted.  And I

16  will just add that at the end of that -- that paragraph

17  for the record is paragraph 24, which I'll add that the

18  Defendant then and now denies all allegations set forth

19  in the Complaint.

20             I would suggest we do the following, then.

21  Absent any objections to the computations under the

22  Guidelines, other than the briefing that has been done

23  on what is a fair sentence and how the Court should

24  handle that, which in this context has become a,

25  especially in a deportation on a 16-level enhancement --

1 should I slow down?  Sorry.

2     THE INTERPRETER:  I'm okay, Your Honor.

3     THE COURT:  Has become a major issue in most

4 cases in this District and across the country.  But, I

5 will go ahead and make the findings as to the advisory

6 guidelines and then go straight to argument.

7     Mr. Olson, is that acceptable to you.

8     MR. OLSON:  Yeah, my other objection as to

9 how to compute the terrorist threat is also duly noted.

10     THE COURT:  Well, why don't we take that up

11 right now?

12     MR. OLSON:  My other objection was in fact

13 whether terrorist threats is a -- continues to be a

14 crime of violence.

15     THE COURT:  And that was in the supplemental

16 pleading --

17     MR. OLSON:  That was in the supplemental --

18     THE COURT:  I did get a chance to read them

19 over, so --

20     MR. OLSON:  And I note that I was thinking

21 about this, and then I read the *Johnson* case, and I

22 thought about it some more, and I thought that in all

23 fairness to Mr. Pastor Sanchez-Martinez, that I should

24 just make a blanket objection to terrorist threats

25 continuing to be classified as a quote, unquote, crime

1   of violence.  Noting that not only is this District

2   Court's precedent contrary to me, the Eighth Circuit has

3   affirmed that in several cases which I have cited.  So,

4   I know that is contrary to precedent.

5          I simply have some questions about whether

6   terrorist threats, the way that it is written under

7   Minnesota law should continue to be classified as a

8   crime of violence.  And so my objection is noted.

9          THE COURT:  Do you want to be heard on that?

10          MR. NEWBERRY:  Well, Your Honor, on this

11   issue, we do object.  And we urge the Court to strike

12   the supplemental pleading as untimely.

13          I read the supplemental position this

14   morning.  As I reviewed the record before the Court

15   today, I'm not sure whether the decision you make today

16   would be sustainable on appeal.  And I say that because

17   I have not read the amended -- the Complaint that you

18   suggested was filed regarding the terroristic threats.

19          THE COURT:  I haven't seen a complaint.  I

20   have looked at the -- and there may not have been one.

21   I have seen the State Court record, and will be glad to

22   make you a copy with the statutory citation, because the

23   defendant either has to plead guilty to Subdivision 1,

24   2, or 3.  He pled to 1.

25          And of course, one could make the argument,

1    if the conviction didn't control and one wanted to look

2    at the factual basis for the plea -- but, I probably --

3    not probably, I will take a position today, because I

4    think I have ample -- apart from any decisions I have

5    made in the past, I will take a position today on the

6    argument.

7            MR. NEWBERRY:  Then, more specifically, with

8    regard to the argument Mr. Olson puts forward this

9    morning, I have not read, or have not had sufficient

10    time to read the terroristic threat conviction and the

11    extent to which there may be some reliance on the

12    following language, quote, "Reckless disregard of the

13    risk of causing such terror."  Closed quote.

14            I simply don't know the extent to which that

15    part of the Minnesota Statute was relied on.

16            THE COURT:  I am about to rule on it, because

17    I have got it right here.  So --

18            MR. NEWBERRY:  If you suggest to me that that

19    language played no role in the terroristic threat

20    conviction of Mr. Sanchez-Martinez, then I would agree

21    that there would be no issue on appeal, as I see it.

22            THE COURT:  And as I understand terroristic

23    threat, and I will note the objection of the Defense, I

24    don't believe it makes any difference whether it played

25    a role or not.  It plays no role in sentencing.

1        Subdivision 1 doesn't break out and -- in

2   State Court, and Subdivision 1 is the most seriously

3   treated.  In other words, Subdivision 1 is intent to

4   terrorize.  That is the title of Division 1, and there

5   is no subdivision.  And I will get to the intent piece

6   in a moment.

7        Second, Subdivision 2 is, communicate to

8   terrorize, but that is for incendiary and bombing

9   devices.  And Subdivision 3 is replica or firearms and

10  the use of those to threaten.  Those, ironically or

11  otherwise, are treated less seriously under the state

12  guideline scheme than Subdivision 1.  And that is

13  probably in part -- one is very generic.  But, why don't

14  I just make a ruling?  That might be in the best

15  interest of time.  And if either one of you want to make

16  any additional objections, requests for clarification,

17  do so.

18        But the state record is clear that

19  Subdivision 1 of 609.713 entitled terroristic threat was

20  pled guilty to.  And not to be indifferent, Mr.

21  Newberry, to your untimely argument.  Would I probably

22  grant the request because it was untimely if I hadn't

23  been down this road before and it is coming up so

24  frequently if I thought there was some prejudice to

25  either the United States or the Defendant, because I

1   wasn't fully informed and able to proceed, separate from

2   what people think of any decision I make today?   Then

3   the right thing to do would be to either strike it or

4   continue the case.   I don't believe either are

5   necessary.

6           The statute reads, and I quote, it is first

7   entitled under Subdivision 1, which is, according to all

8   of the records that I have from the state system is what

9   was pled to, which would make sense, because the others

10   require anything from threatening to evacuate a

11   building, to exhibits, branches or otherwise, just

12   employs a replica or firearm, and they are using that

13   for a variety of different reasons.

14           Subdivision 1 states, "Whoever threatens ..."

15   it is entitled, "Threat and Violence; Intent to

16   Terrorize."   And then here is what the statute says.

17   "Whoever threatens directly or indirectly to commit any

18   crime of violence with the purpose to terrorize another,

19   or cause evacuation of a building, or in reckless

20   disregard of the risk of causing such terror ..."   in

21   other words, it is the intent to do something, and then

22   maybe in reckless disregard, as I interpret it,

23   consistent with the elements in the Jury Instruction

24   Guide, I might add.   Or in reckless disregard of whether

25   it would cause the -- in other words, whether the

threat, directly or indirectly to commit a crime of
violence, whether the purpose was to terrorize, or in
reckless disregard of whether that would occur, may be
sentenced to more than five years, or up to five years
in prison or a fine of not more than $10,000.

And then the other subdivisions actually
carry a lesser offense, a lesser penalty of up to one
year and one day, which is what the state sentence and
the -- without speculating about why the judge, what he
did in sentencing to time served, the one year and the
one day would have been a departure under the State
Guidelines, even if there was no criminal record under
Subdivision 1, which is clearly what was pled to.

But, the -- so, my view is, noting the strong
objection of the Defense, and is, as Mr. Olson says, but
I have ruled this way similarly, and I also believe that
I don't need an additional factual record, because it is
the elements under existing U.S. Supreme Court law,
*Begay* and other cases, it is the elements of the
offense, not the fashion under which it was committed.

It is, I find, a crime of violence, even with
the most recent narrow construction, because I have gone
the other way, not on this offense but on some others.
And while this will become relevant on the nature of the
crime of violence, in other words, whether we are about

1  to go to arguably the most important issue that affects

2  potentially most dramatically the sentence, whether it

3  is murder or terroristic threat, it is the same

4  enhancement, 16.  It doesn't matter to the guidelines.

5         And so, it may be relevant for another

6  reason, what exactly was pled to.  But, looking at the

7  elements of the offense and under 609 for the record,

8  703, Subdivision 1, I find noting the objection of the

9  Defense that it is a crime of violence.

10        And that I have taken due note to the role

11 that reckless disregard or indifference plays to that

12 element of that offense, but I find for the reasons

13 stated, it is a crime of violence.

14        Noting the objection of the Defense, and I

15 suspect, perhaps, over the objection of the Government,

16 we are about to go to an issue where I think the kind of

17 crime of violence it is becomes an issue which I think

18 is where most of the brief of Mr. Olson went, and where

19 most of them are going here and across the country on

20 this 16-level enhancement.

21        So, that creates a Total Offense Level of 21,

22 based upon the Category III.  It is an advisory sentence

23 without any departures of variances of 46 to 57 months,

24 supervised release term of two to three years, fine

25 range of $7,500 to 75,000, special assessment of $100.

```
 1              Absent an objection from the Government, Mr.
 2   Olson, I will hear from you additional argument on given
 3   the state of affairs, even though you have telegraphed,
 4   I think, what you think a fair sentence is, anything you
 5   would like to say?
 6              MR. OLSON:  Well, I think that I -- at least
 7   I have tried, to the extent that a person can take a
 8   34-year-old's life experiences and put them on a piece
 9   of paper and give it to the Court, I think I have tried
10   to illuminate the background and the individual
11   characteristics of Mr. Sanchez-Martinez, and the
12   circumstances of this offense.  I say that --
13              THE COURT:  And I think you have.
14              MR. OLSON:  Well, I appreciate that, because
15   I have spent quite a few hours talking with Mr. Sanchez
16   Martinez about his whole background, his upbringing, and
17   what it was like to come to this country as a young
18   person, work in the rural setting in Minnesota and find
19   a culture and an environment --
20              THE COURT:  Did you tell him it is not very
21   far from where you grew up and where I grew up in
22   Austin, Minnesota.
23              MR. OLSON:  I probably have in the past, but
24   I will tell him again that both Judge Frank and I are
25   from southern Minnesota.  I from Rochester, and he from
```

1    the Spring Valley area.  And so, we have got some

2    agrarian base in our souls, as well.

3            THE COURT:  I'm 25 miles, it would be about

4    25, 30 miles straight east of Austin.  He grew up in the

5    fancy town.  I grew up in the little farm town of Spring

6    Valley, co --

7            MR. OLSON:  I grew up outside the city

8    limits, at least.  And my father grew up on a farm.  He

9    was a poor farmer in North Dakota and Windom.

10           And so, you know, he comes here and -- you

11   know, he gets deported, goes back, gets deported again,

12   and this things happens -- it is kind of a sad state of

13   affairs when a person finds himself in this chaos of a

14   life situation, because he really doesn't have a life in

15   Mexico.  And he knows he can't come back here because he

16   is not welcome here.

17           Now, I am going to get back to that in a

18   second because I think ultimately that is the overall

19   point of this law; but, he really was in desperate

20   circumstances.  I have in only a couple of paragraphs

21   tried to illuminate on the trials and tribulations that

22   he faced this last time when he came back here and was

23   close to death crossing the desert getting kidnapped,

24   and a whole horrible set of circumstances.

25           He -- when I first met him at the Sherburne

1   County Jail, he had already been incarcerated from his

2   arrest down in southern Minnesota.  It took some time to

3   get him up here.  And he was actually happy to be where

4   he was, given the alternative.  Healthcare, three meals

5   a day, and everything.

6            Now, when we get to the end of the question

7   about an appropriate sentence as I have noted, I mean, a

8   cynic could say:  Well, let's just lock him up.  He

9   wants to be locked up.  Let's lock him up.  It is not

10  really where he is at.  No person enjoys incarceration.

11  You may enjoy incarceration as the lesser of two evils,

12  but nobody likes to be incarcerated.

13           Part of the obvious overall intent of this

14  Immigration policy in this criminal statute is to, I

15  suppose, impress upon individuals that we don't want in

16  this country, that they shouldn't come back.  And once

17  they are deported, don't come back again.  So, he is

18  back here.

19           He is not going back to Mexico just to cross

20  the border again to get back in prison and go through

21  this whole cycle again.  He is an intelligent person.

22  He has been a hard worker all his life.  He is not a

23  hardened criminal.  This is the longest incarceration he

24  has ever faced.  He understands he can't come back here.

25  And he doesn't want a life of being institutionalized or

1   imprisoned.  He has avoided that so far in his life.  He

2   is not going to start now, even though this will be his

3   longest imprisonment.  But, with his health returned, he

4   is getting a little bit of education, he is thinking

5   about what he is going to do when he gets back there.

6   So that this time when he gets deported, after whatever

7   the length of incarceration is, he is not going to go

8   back to Vera Cruz, he is not going to get back into that

9   family situation, that organized crime situation which

10  drove him back here, he is going to go down there with

11  his health in tact and with a program to stay in place

12  and avoid the problem areas of the country, work and

13  stay out of this country.  He understands that and he

14  gets the picture.

15           Now, obviously, as a part of my briefing, and

16  I don't have to reiterate too much, this -- I mean, this

17  16-point bump in terms of implementing a Guideline

18  Sentence puts an offense such as this in the same group

19  as rape and murder, and it is all 16 points.

20           THE COURT:  True, true.

21           MR. OLSON:  Number one, it is an anomaly

22  within the Guideline structure, itself.  I have

23  discussed that in my position paper.  It is also

24  somewhat ludicrous.

25           Obviously, we are not going to go back and

1   retry what happened two and a half years ago with this

2   fight with a former girlfriend thing.  But, the fact

3   that he spends three months in the county jail and they

4   cut a deal for time served, I think that kind of says

5   something about how serious the situation was.  It

6   certainly says how serious the court treated it.

7         But, to equate that on the same level as a

8   serious drug offense, a serious assault, you can rob a

9   bank, you can kill somebody, and it is 16 points.  And

10   even the guidelines a number of years ago in an

11   application note noted that maybe that 16 bump isn't

12   always appropriate for everybody.  So, I have suggested

13   a simple -- if we are going to use the charts, the

14   numbers, if you characterize that instead of 16 points,

15   you call it like a regular 8-point felony, we get into

16   the ballpark of 18 to 24 months.

17         And not knowing how to pick out numbers, and

18   also realizing that it is a criminal offense, he also,

19   to his credit, he is improving.  His health has improved

20   dramatically.  His diabetes is under control.  And if

21   the Court were to give him 24 months, he has been in

22   jail since last summer.  You know, he will be out in 18,

23   a little less than 18 months.  And with his senses about

24   him and his health in tact, he will be in a position, I

25   think, to get back to his country without returning here

1  and causing us anymore problems.

2          You know, other than that, I don't think I

3  have anything additional to add, with one comment, that

4  I have found him to be a pleasant individual.  He

5  typically has a smile on his face.  He is pleased to

6  meet me.  He likes to talk.  And he appreciates the fact

7  that at least people have taken care of him at the

8  Sherburne County Jail.  And he assures the Court it is

9  not his intention to become a revolving door of

10  imprisonment.  He is going back to Mexico and he is

11  going to stay there.

12          THE COURT:  Do you know if your client wishes

13  to address the Court, Mr. Olson?

14          MR. OLSON:  I think he would like to say

15  something.

16          THE COURT:  Sir, you have the right to say as

17  much or as little as you like.

18          Some Defendants talk at these hearings, some

19  don't.  As your lawyer knows, the rule is I cannot use

20  it against any defendant if they don't want to say

21  something more than what their lawyer has said.

22          So, with that, is there anything you would

23  like to state or ask the Court?

24          THE DEFENDANT:  I would like to say

25  something.  First of all, I would like to thank God for

1    being here.  I feel very happy.  Happy.  My health is

2    good.  When I was on the outside I was doing very bad.

3    But, thank God, here in this place I am happy and

4    everything, and doing very well healthwise.  And I have

5    learned and I made a mistake.

6                And now I know what I really want to be.  And

7    I am very grateful to the people here.  I am grateful to

8    all of you.  I have been treated very, very well.  And I

9    can't have any complaints.  And thanks to you guys and

10   to God, I am doing very well healthwise.

11               And I think now I can go home feeling very

12   happy.  It was a wonderful experience.  After studying

13   so many years here, I have been in jail here for eight

14   months, and I think in eight months I will be able to

15   take away from that what I never was able to do in my

16   life before.

17               The reason why I returned was because of my

18   illness.  I was dying.  And because of the problems that

19   I had over there.  But now I have become very familiar

20   with the word of God, and now I know what my purpose is.

21   And I am very happy with the purpose that I now have in

22   mind.

23               So now I am just waiting for whatever it is

24   that you guys decide.  And that will be just fine.  And

25   thank you for everything.  That is all.

1          THE COURT:  I would like to know before we go

2    on to Mr. Newberry -- he said at least twice he now

3    knows what his purpose is.  I would like to hear what

4    that is.

5          THE DEFENDANT:  Yes.  I have read the word of

6    God.  And my purpose is that I have come to understand,

7    and I think my purpose in God having me come back here

8    was so that I could come to understand his word.  And

9    with what he has made me understand, I need to go back

10   to where I am really understanding what it is that the

11   word of God is saying.  Because the people back where I

12   am from are just blinded by that.

13          And now I will be the first one to go back

14   there and bring that truth to them.  That is my best

15   work that I can do.

16          THE COURT:  Thank you.

17          THE DEFENDANT:  That's all.

18          THE COURT:  Mr. Newberry?

19          MR. NEWBERRY:  Well, Judge, we are all in a

20   difficult spot, here.  There is no question about that.

21   And you are the one that wears the robe, so you get to

22   make the ultimate decision.

23          What I can say is if we were here in a

24   situation where Mr. Sanchez-Martinez had not been

25   deported three times as he stands here today, if he

1  hadn't had two drunk driving convictions, the drug

2  conviction, the forgery conviction and the terroristic

3  threat conviction, which there may be some question

4  about, then these arguments would resonate more clearly.

5  But, we are not in that situation.

6           We do have an individual who has been

7  deported three times.  So, this is not a new phenomenon

8  for Mr. Sanchez-Martinez to understand that he is not

9  welcome in the United States.

10          It is also a difficult circumstance, and

11 albeit understandable in a human level that a person

12 would attempt to leave a violent community where Mr.

13 Sanchez-Martinez lived, where I suggest he was in and

14 around drug or gun or gang violence, and even violence

15 associated with his own family members.

16          To suggest then that a person would leave

17 that environment, come to the United States, may be

18 understandable.  But then you would hope that that

19 individual would avoid any violation of the law in the

20 United States.  Here again, we don't have that.

21          I'm not sure whether the Court would consider

22 one last effort to continue the sentencing for the

23 purpose of obtaining a transcript of the plea to the

24 terroristic threat, obtaining whatever charging

25 documents there may have been in the plea petition, then

1   I believe you might have sufficient facts upon which to

2   properly evaluate that circumstance.

3             There is no question but that on the human

4   level we can understand -- we can understand a sad

5   story.  And this is certainly a sad story.

6             But, ultimately, if we accept Mr.

7   Sanchez-Martinez at his word, he said he came here

8   because of the violence in his community, and number two

9   because of his ill health.  Well, if we even look at the

10  Guidelines, it would suggest that he will be back again

11  for those reasons, alone.  And so that is why we have

12  Guideline sentences, to deter people from committing

13  similar or other criminal acts in the United States.

14  And so it is for those reasons we have urged the Court

15  to impose a guideline sentence based on the original

16  pleadings of the parties, which clearly demonstrated

17  that there was a crime of violence for which the

18  16-level increase was applicable, notwithstanding based

19  on the amended submission today by defense counsel

20  regarding the language of the statute.

21             And I must confess, Your Honor, that given

22  the reading of the statute that you provided for us,

23  where it makes reference to the reckless disregard, I

24  believe that Mr. Olson is correct.  Because when we look

25  at the statute, there are intentional acts and then

1    there are acts which are less than intentional, and

2    then --

3              THE COURT:  I don't believe so.  One, it is

4    the most overcharged felony in State Court.  I handled

5    hundreds as a State Prosecutor and Judge.  Intent is an

6    element of every single terroristic threat.  Intent to

7    terrorize is an element of the offense.  And whether the

8    effect on the person in reckless disregard -- in other

9    words, that is why they don't break out the sentence.

10   The state Sentencing Guidelines does not break out the

11   reckless disregard language, neither does Subdivision 1,

12   so I will just repeat it, whoever threatens, directly or

13   indirectly, because we could actually stop right there.

14   Well, I wonder what that means, directly or indirectly?

15   So, it is threat to commit a crime of violence, to

16   terrorize another, or in the risk of reckless disregard.

17             I mean, I will take the further step of

18   saying that even if it is your interpretation, I have

19   held before and I will hold again today, it is a crime

20   of violence even under the most narrow reading of the

21   statute.  Because I suspect I have, more than most of my

22   colleagues in this District, been excluding certain

23   crimes, because I think the key is the elements under

24   *Begay*.  What are the elements he pled to under

25   Subdivision 1?  And reasonable people, I agree with you,

1    Mr. Newberry, may differ.  And I suppose we are in this

2    ironic position of where the prosecutor and the defense

3    agree on this.

4            I don't believe that a transcript is going to

5    -- I will probably now order one, but I will probably

6    respectfully not continue the case, because I -- for a

7    different reason.  I believe that whether I use the

8    3553(a) factors and how I am going to handle the

9    enhancement, I would end up at the same place, anyway.

10           MR. NEWBERRY:  Well, I am certainly comforted

11   by that, I must tell you that.

12           What I can say is with regard to the statute

13   that we are talking about, the terroristic threat

14   statute, Minnesota Statute, if we are involved with that

15   categorical approach and the statute is over broad with

16   regard to could it be a crime of violence or not, there

17   would be an issue.

18           Then we go to the modified categorical

19   approach --

20           THE COURT:  True.

21           MR. NEWBERRY:  Then the Court is allowed to

22   look at the charging document, the plea petition, the

23   transcript and the colloquy of the Court.

24           THE COURT:  I agree.

25           MR. NEWBERRY:  We don't have any of those

1   things.  So, and with regard to the notion that the

2   Defendant received the sentence of time served, I would

3   suggest that it is of no significance.  It certainly

4   would suggest that it wasn't the most serious crime.

5   But, you know as well as I do, that courts often

6   sentence a defendant recognizing that he is going to be

7   deported.  So, we don't have to spend the money to

8   incarcerate him.

9               THE COURT:  That is true.

10              MR. NEWBERRY:  So, the fact that he got a

11  sentence of time served is of little significance.  But,

12  the point is that we simply don't have the information

13  to fully evaluate it, though.

14              Having said that, if you were going to impose

15  a sentence in the alternative, I suspect that that might

16  be sustainable on appeal.

17              THE COURT:  Something that I probably would

18  have the right to do, whether I say so now, and I am

19  sure that Mr. Olson, you may have to explain when we are

20  done here what this exchange has been between the

21  lawyers and the Court, but I will go ahead and order,

22  and I will go back and re-review what the Probation

23  Officer has, because I am assuming they sent us

24  everything they had.  But, we will go ahead and take a

25  look at that.  And I am sad to say that many of these

1   offices, whether it is the recent crisis they are in

2   financially, they seem to be -- many of these State

3   Courts seem to be almost indifferent to sending us

4   information.  And I use the word indifferent because it

5   takes them a long time.  And in most of the sentences we

6   do, we never have received information.

7           Here we have -- don't have a transcript, but

8   what I am going to do today, unless -- I intend to

9   proceed with the sentencing, because I believe that I

10  will end up at the same place, anyway, with the

11  sentence, not necessarily suggesting everybody is going

12  to agree on, well, that maybe should be the case, but

13  that will be the case and that is how I felt before I

14  came into the courtroom.

15          But, I will go ahead and order those things

16  and reserve the right -- I mean, I have to be able to --

17  it is not a constitutional doctrine, but I have to be

18  able to sleep at night.  So, if I get something back

19  under the modified approach and said, had I known this,

20  it is so different than what I assumed, I just can't

21  envision that.  Because I think for other reasons under

22  3553(a) -- and frankly speaking, I am going to come down

23  as I have in a number of these cases off the 16-level

24  enhancement over the Government's objection to a lower

25  level, not to where Mr. Olson wants me to go, but what I

1   think reflects what he pled to and is an acknowledgement

2   that, well, pleading to terroristic threat, however you

3   see the approach, shouldn't be treated the same way as

4   pleading to murder, as just one example, or child sexual

5   abuse, as another.

6           I will order these things, myself, just to

7   get -- to soothe my own conscience, apart from its legal

8   effect.  But, I will probably -- I am going to go

9   forward.  No disrespect intended to you or to Mr. Olson.

10          MR. NEWBERRY:  No disrespect taken, sir.

11   Thank you.

12          THE COURT:  Do you want to have the last

13   word, Mr. Olson?

14          MR. OLSON:  I think we are ready to hear from

15   the Court on this.

16          THE COURT:  Here is my view.  I will say this

17   first to you, Mr. Sanchez-Martinez.  The issue isn't

18   whether a human being should be treated the way you were

19   treated in Mexico, and I mean no disrespect to your

20   native country.  I am all too aware, and perhaps not as

21   aware as I should be of some of the poverty that many

22   people in this country, most probably don't understand,

23   some of the obstacles that you have that most of us

24   don't understand.  The flip side is, and you talked

25   about your purpose today, and the flip side is, you

1    talked about what you are going to do when you go back.

2    And then I will talk about what has been mentioned

3    about, well, why wouldn't you come back a fourth time,

4    in just a moment.  But, I have been to Mexico.  I

5    haven't been in some of the real poverty stricken areas,

6    but I have been to Guatemala, Costa Rica and I have

7    worked on what is called a Habitat for Humanity Project

8    with a couple of my daughters in those countries, even

9    though I am embarrassed to say, I don't speak Spanish,

10   and they speak it fluently.

11              It is one of my many failures in life.  And

12   there is something special about what they have here.

13   They don't need the fancy cars, money in the bank

14   accounts.  Poverty is poverty.  But, they have a

15   spiritual life and value other people and things in a

16   way that many of us don't understand.

17              So, I mean no disrespect to many parts of

18   your country, because I think there are parts that we

19   don't get, either.  But, my view today is this.  And

20   some of the things that were said by Mr. Newberry and

21   Mr. Olson are things that lawyers need to say and have

22   to say, it is their responsibility to say.  So, I have

23   really no issue with that.

24              What I have a difficult time with is the fact

25   that you came back, no matter how I treat the

1    terroristic threat.  You came back three times, and I

2    will deal with that.  I take you at your word today,

3    sir.

4             And something that will play no role in my

5    sentence, oftentimes what is not said in these hearings,

6    because it is not relevant is, not only did you come

7    back, and this really can't be held against you, and it

8    is not part of my sentence, but everyone knows what a

9    joke it is that these employers who are never until

10   recently prosecuted, Hormel and others, they know you

11   are good people, they know you are good workers, so you

12   not only come back, but you come back to the same rural

13   areas because you know nothing is going to happen.

14            And proof of that is that in each State Court

15   case you had you got everything but a written apology

16   from the judge, the way it looks to me.  Because your

17   lawyer is right, you have done little or no time.  And

18   maybe that was a disservice to you -- not intended I am

19   certain -- whether it was because of the deportation?

20   Because the first couple of offenses, everything kept

21   getting stayed.  They even dismissed the violation so

22   they could deport you the second time.

23            And so what I have to look at today is, what

24   is that sentence that will promote respect for the law,

25   that is sufficient but not greater than to serve what I

1  have to carry out my oath, but to treat you as a human

2  being.  And what I am going to do is this.

3              First, noting the objection of the

4  Government, because I think that is the best way to

5  proceed, here, I don't believe on the departure basis

6  that the Guidelines contemplated, and it is contrary to

7  3553(a) to say, I treat this human being the same

8  whether it is murder or a heinous sex crime or a

9  terroristic threat.  I am going to treat it at what is

10  called a level 12 enhancement.  I don't believe that 8

11  captures what you pled to, no matter how it was pled.

12              And so, if I treat it as a level 12, which is

13  also going to be consistent in a moment with the 3553(a)

14  factors, the advisory sentence is 30 to 37 months.  I

15  will be imposing a 36-month sentence today, which I

16  believe is sufficient but not greater than to meet the

17  categories of the rules of sentencing.

18              It will promote respect for the law and

19  recognize the returns you've made here, and trying to

20  respect you as a person on why you returned.  And I

21  don't believe it treats you different than

22  similarly-situated individuals.

23              And so, on the one hand it is a departure

24  from the Guidelines for the record because I decline to

25  impose a 16-level enhancement.  I will treat you in an

1  offense level 17 with a Criminal History Category of

2  three, so that is where I came up with the 30 to

3  37 months.

4          And even if I set the Guidelines aside,

5  looking at your record, who you are, taking you at your

6  word, I believe that a sentence of 36 months, and they

7  will take the time off for credit for time served by the

8  Bureau is a fair and appropriate sentence under all of

9  the circumstances.  Even though I reserve the right to

10 take a second look, I am quite certain it will play no

11 role in any change or reduction of sentence.

12          I am going to order the transcript, assuming

13 we can get our hands on it, and I will double-check all

14 of the records that we have here, because I didn't read

15 everything Probation had this morning.

16          Before I actually impose it and ask for a

17 recommendation for a facility, in light of our extensive

18 discussion that we have had upon this terroristic

19 threat, do you want to be heard additionally, Mr.

20 Newberry?

21          MR. NEWBERRY:  No, thank you, Your Honor.

22          THE COURT:  Mr. Olson?

23          MR. OLSON:  No, thank you, Your Honor.

24          THE COURT:  Do you have a recommendation for

25 a facility?  I don't think it is going to make much

1   difference.  I think even if I recommend a local

2   facility, I think your client will be moved to the

3   southern part of the United States.

4           MR. OLSON:  He indicated to me he would

5   prefer to be moved to the southern part of the United

6   States because it will make his inevitable deportation

7   faster.  So, that is fine.

8           THE COURT:  As the sentence of this Court and

9   judgment of the law, I commit you to the custody of the

10  Bureau of Prisons for a period of 36 months.  Unlike

11  State Court where the Judge is required to announce how

12  many days credit, those months will be evaluated and

13  deducted from that 36 that you have been in custody.

14  They must get it right most of the time because we have

15  very few motions or requests saying we haven't been

16  given the credit that we were entitled to.  Then you

17  will see additional credit from the Bureau for good time

18  as you serve your sentence.  I recommend a facility in

19  the southern part of the United States as close to

20  Mexico as possible.  And that would probably happen

21  anyway, sir, even if you ask for Minnesota, because as

22  you are maybe aware, then they can do the Immigration

23  hearings -- they do everything all at once.

24           I impose no fine given your financial

25  circumstances.  I sentence you to a term of three years

1    of supervised release.  And that won't hold up your

2    return to -- the supervised release term -- the moment

3    your time is done with the Bureau, you will be deported,

4    either voluntarily or involuntarily.  That is not my

5    decision to make.

6              The three years of supervised release, if you

7    would remain here in this country or return, would be as

8    follows:  That if you return to the country and remain

9    here, you must report to a probation officer within

10   three of your release from prison.  Second, you shall

11   not commit any crimes, be they federal, state or local.

12   Third, you shall not possess any controlled substance.

13   And if you remain in this country, you will be tested

14   once within two weeks, and an additional two times

15   within a reasonable amount of time.

16             You shall not possess a firearm, ammunition,

17   destructive device or other dangerous weapon.  You shall

18   cooperate in a DNA sample, as every federal defendant

19   has since October of 2004.  You shall comply, and that

20   is one reason I looked at the state statute this

21   morning.  If you remain in the country or return within

22   that three-year period, you shall comply with the

23   requirements of the state sex offender registration

24   notification law and the Federal law under, for the

25   record, and I apologize for citing the number.  42,

1   Title 42, USC Code 16901.  Probation would work with you

2   on that if you remain in this country.

3            In other words, there is both the state

4   requirement and the federal requirement.  And they would

5   work with you if you remained in this country or

6   returned within the three-year period.

7            I direct that you comply with all Immigration

8   Rules and Regulations.  So if you are deported, which is

9   not my decision to make, either voluntarily or

10  involuntarily, you can enter the United States legally,

11  but not illegally.  And upon any re-entry, you should

12  report to a probation officer within three days if it is

13  within that three-year period.

14           I impose a $100 special assessment fee for

15  the Crime Victims' Fund, which they will withhold from

16  any wages earned while in the Bureau of Prisons, because

17  it can't be waived or suspended by me.  You have the

18  right to take an appeal.  I don't believe there's an

19  appeal waiver, Mr. Newberry?

20           MR. NEWBERRY:  That is correct.

21           THE COURT:  You have a right to take an

22  appeal from the case and the sentence.  The notice of

23  appeal must be filed within 10 days after the judgment

24  of this Court is filed, called the criminal judgment,

25  and that will be done, I suspect, either tomorrow or

1    Monday.  If you can't afford to hire a lawyer, one will

2    be appointed to represent you in the case.

3              As to the designation, sir, the Bureau of

4    Prisons makes that decision out of Texas for all

5    defendants.  It takes them two to three weeks, so you

6    would likely stay here for two to three weeks.  And

7    sometimes we have learned in the last few months there

8    has been a short delay or a little more than a short

9    delay on being transported, because you then are

10   transported to Rochester and flown out down there to

11   your facility, generally speaking.

12             Ms. Perez, is there anything else I have

13   overlooked?

14             THE PROBATION OFFICER:  No, Your Honor.

15             THE COURT:  Let me say this to you, sir --

16   anything further, Mr. Newberry?

17             MR. NEWBERRY:  Nothing further.

18             THE COURT:  Mr. Olson?

19             MR. OLSON:  No, Your Honor.

20             THE COURT:  And I will follow through.  I

21   will get copies and I will make sure whatever I get, you

22   get.  I will go back through the records that we have to

23   see if there is any other information there.  I will

24   just automatically provide it to both of you.  Maybe

25   more importantly to you, sir, I must say it has been

1  quite a morning for me.  There are two firsts, and I

2  have been -- this is my 26th year as a Judge.  But, two

3  things, at least, that haven't happened in Federal

4  Court.  One is, on a case before you a defendant came

5  in, and I am sure that he would be stereotyped in part,

6  frankly, because he was unemployed at the time of his

7  sentence a few years back and he is Native American.  He

8  came in and the United States asked for him to pay up

9  his restitution at $75 a month.  And he turned to me and

10  said, I would rather pay $75 per paycheck.  I just got a

11  job, so I will pay at least $150 a month.

12          It is a first for me, and to his credit.  And

13  you, sir -- and I saw a smile on a couple of the Deputy

14  Marshals' faces -- when you thanked for your good

15  treatment, you thanked for the good medical care you

16  received and you say you were in a good place, and if it

17  was interpreted correctly you used the word happy.  It

18  says something about you.  And you have convinced me

19  that you have this purpose in mind, and you either have

20  it and believe it, or it was kind of an attempt to get

21  over on me.  And I don't think it was the latter.  But,

22  if it was, then only I am responsible.

23          So, if you follow through with what is here

24  and what is here, I think you mean what you say and when

25  you are done serving your sentence, and this isn't said

1   because I think you should agree with what I have done,

2   but I hope things work out for you.  All right?

3                 THE DEFENDANT:  Yes.

4                 THE COURT:  We are adjourned.  All right?

5   And I will get that information to you.  All right.

6                 (Adjournment.)

7

8

9

10

11                Certified by:   s/ Jeanne M. Anderson

12                                Jeanne M. Anderson, RMR-RPR
                                  Official Court Reporter
13

14

15

16

17

18

19

20

21

22

23

24

25